Scott D. Baker
Emily B. Kirsch (EBK 4216)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400
Attorneys for Plaintiff

JUDGE SCHEINDLIN



07 CV 3472

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Dreyer's Grand Ice Cream, Inc., | Case No. |
| Plaintiff, | |
| v. | COMPLAINT |
| Integrated Brands, Inc. and Eskimo Pie Corporation, | MAY 0 1 2007 |
| Defendants. | U.S. CASH... |

Plaintiff, Dreyer's Grand Ice Cream, Inc., by its attorneys, Reed Smith, LLP, as and for its complaint against the defendants, Integrated Brands, Inc. and Eskimo Pie Corporation, alleges as follows:

PRELIMINARY STATEMENT

1.      This is an action for injunctive relief, specific performance, an order of attachment and/or constructive trust and damages for breach of contract, breach of fiduciary duty and conversion.

JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332. The amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

3.      Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims in this action occurred in this judicial district and by contract, the parties stipulated to jurisdiction and venue in this judicial district.

PARTIES

4.      Dreyer's is a Delaware corporation with its principal place of business in Oakland, California.  Plaintiff is in the business of manufacturing and selling ice cream and ice cream products.

5.      Defendant Integrated Brands, Inc. (also referred to, alone or together with Eskimo Pie Corporation, as "Cool Brands") is a New Jersey corporation with its principal place of business in Markham Ontario, Canada.  Integrated Brands, Inc. was, up until the time of the events alleged herein, in the business of marketing and selling various ice cream and ice cream novelty products and is now, upon information and belief, in the process of winding up such businesses, or a substantial portion of such businesses.

6.      Defendant Eskimo Pie Corporation, (together with Integrated Brands, "Defendants") is a Virginia corporation with its principal place of business in Richmond, Virginia.  Eskimo Pie Corporation was, up until the time of the events alleged herein, in the business of marketing and selling various ice cream and ice cream novelty products and is now, upon information and belief, in the process of winding up such businesses, or a substantial portion of such businesses.

FACTUAL BACKGROUND

The Asset Purchase Agreement

7.      On January 23, 2007, the parties entered into an Asset Purchase Agreement by and among Dreyer's as Purchaser and the Defendants as Sellers (the "APA").  A true and correct

- 2 -

copy of the APA is attached hereto as Exhibit A. The APA provides that the Sellers will sell and the Purchaser will buy certain assets and assume certain liabilities comprising the business of manufacturing, marketing and selling of "Eskimo Pie," Chipwich," and "Real Fruit" trademarked products (the "Frozen Novelty Business"), and the sale and distribution of soft serve ice cream and frozen yogurt products under the "Eskimo Pie," Honey Hill" and "Northern Lights" trademarks (the "Foodservice Business"). Among the assets purchased were the accounts receivable associated with the Foodservice Business.

8.    The transaction contemplated by the APA closed on January 24, 2007 in New York City (the "Closing"). Dreyer's has fulfilled all of its obligations under the APA. Specifically, Dreyer's timely paid the Purchase Price, as defined in the APA, in full to the Defendants, and deposited the "holdback" into an escrow account in accordance with Article 3.4 of the APA.

9.    The Accounts Receivable purchased by Dreyer's are defined in Article 1.2 of the APA as "the accounts receivable, notes receivable of or amounts owing or payable to Sellers in connection with or relating to the Foodservice Business" and a schedule listing each such Account Receivable is attached to the APA.

10.    Nowhere does the APA exclude any Account Receivable from the assets purchased. Under the APA, no Account Receivable is subject to any discount or credit or is in any way represented to be of a lesser value than as listed on the schedule. Nowhere do either the APA or any of the ancillary documents provide for a right of set-off of these Accounts Receivable against any obligation of Dreyer's (or any other party).

The Lockbox

11.    Article 10.1, Post-Closing Matters, of the APA further provides: "Accounts

- 3 -

Receivable. To the extent either Seller receives any payment after the Closing from a customer on account of an Account Receivable such seller shall hold such payment in trust for the benefit of Purchaser and promptly remit such funds to Purchaser."

12.    The parties expected that in the months following the Closing, customers would continue to make payments to the account of Sellers (the "Lockbox") until they could be advised of the new account payment instructions. Accordingly, in order to comply with the APA, Defendants were to account to Dreyer's for payments made by customers and promptly remit the appropriate amounts to Dreyer's.

13.    For approximately two weeks following the Closing, Defendants made regular and timely accountings and payments to Dreyer's of the payments made on the Accounts Receivable.

Defendants Refusal to Pay

14.    However, the last payment by Defendants was made on or about February 9, 2007. In response to Dreyer's inquiries and requests for payment, on or about February 21, 2007, Defendants informed Dreyer's that Defendants would not be making further wire payments despite the fact that their own accounting continued to reflect substantial customer payments flowing into the Lockbox.

15.    Upon information and belief, Defendants may be disposing of the proceeds of the Lockbox for the benefit of Defendants or their officers, directors, employees or principals. In any event, Defendants, without justification, are withholding or otherwise disposing of amounts generated from the Accounts Receivable that are clearly the property of Dreyer's as a means to coerce Dreyer's to make concessions with respect to other claimed post-Closing reconciliations and other wholly unrelated business transactions among the parties not relevant to the

- 4 -

Defendants' obligation to collect and remit payments made on the Accounts Receivable.

16.    Despite numerous and frequent demands for payment, no further payments have been made to Dreyer's. As of May 1, 2007, the deposits into the Lockbox reflecting post-Closing amounts owed to Dreyer's is a total amount of $1,201,815.36 and the amount continues to grow.

**COUNT ONE**
**Breach of Contract**

17.    Plaintiff incorporates by reference paragraphs 1-16 as if set forth fully herein.

18.    The APA is a valid and binding contract and Dreyer's has fulfilled all of its obligations thereunder.

19.    By reason of Defendants' foregoing acts and omissions, including but not limited to Defendants' failure and continued refusal to remit received payments on the Accounts Receivable, Defendants have materially breached their obligations under the APA including, without limitation, their obligations under Article 10.1.

20.    Defendants' material breaches have irreparably injured, and unless enjoined, will continue to irreparably injure, Dreyer's. Damages alone are inadequate to compensate Dreyer's for Defendants' wrongful conduct and Dreyer's is entitled to injunctive relief. Among other things, Defendants should be enjoined from withholding the proceeds generated by the Accounts Receivable and from using or otherwise disposing of those proceeds in any manner other than to promptly remit to Dreyer's.

21.    In addition, and/or in the alternative, as a direct and proximate result of Defendants' breach, Dreyer's has incurred money damages in an amount to be proven at trial, but in all events, a sum or value far in excess of $1,000,000 exclusive of interest and costs. Dreyer's also seeks pre-judgment interest on all damages incurred.

- 5 -

## COUNT TWO
### Breach of Fiduciary Duty

22.    Dreyer's incorporates by reference paragraphs 1-21 as if fully set forth herein.

23.    The APA provides that the Accounts Receivable were purchased by Dreyer's and the full price therefor was paid by Dreyer's at the Closing. Article 10.1 of the APA obligates Defendants to hold payments made on the Accounts Receivable in trust for the benefit of Dreyer's. By virtue of the trust relationship created by the APA, Defendants owe a fiduciary duty to Dreyer's to hold the payments on the Accounts Receivable sold to Dreyer's in trust for Dreyer's sole benefit and to promptly pay those amounts to Dreyer's.

24.    By reason of the foregoing acts and omissions, including but not limited to Defendants' failure and continued refusal to remit payments received by Defendants on the Accounts Receivable, Defendants have breached their fiduciary duty to Dreyer's.

25.    As a direct and proximate result of Defendants' breach of their fiduciary duty, Dreyer's has incurred money damages in an amount to be proven at trial, but in all events, a sum or value far in excess of $1,000,000 exclusive of interest and costs. Dreyer's also seeks pre-judgment interest on all damages incurred.

26.    Defendants' conduct, including but not limited to abusing its position of trustee over the proceeds of the payments made on the Accounts Receivable and withholding, or otherwise disposing of such funds, is calculated to take advantage of Dreyer's vulnerable position (i.e., its immediate need for the cash flow and total lack of access to the proceeds at issue) in order to extract other unrelated financial and business concessions from Dreyer's. Defendants' unlawful actions are intentional and taken in wanton and reckless disregard for

NYLIB-426009.3-EBKIRSCH 5/1/07 2:50 PM

Dreyer's clear rights in order to maximize the value of Defendants' remaining businesses for final disposition to their principals in connection with their winding up. Such willful and wrongful conduct is egregious and reprehensible and warrants an award of punitive damages.

## COUNT THREE
### Constructive Trust

27.     Dreyer's incorporates by reference paragraphs 1-26 as if fully set forth herein.

28.     By virtue of the acts and omissions alleged, and with particular reference to Article 10.1 of the APA, Defendants owe a fiduciary duty to Dreyer's to hold payments on the Accounts Receivable in trust for Dreyer's.

29.     In reliance on the fiduciary duty established, as well as on the promise set forth in the APA to hold the funds in trust and to promptly remit to Dreyer's, Dreyer's agreed to the mechanism put in place whereby customer payments on Accounts Receivable purchased by Dreyer's would be deposited directly into Defendants' account under Defendants' sole control for the benefit of Dreyer's.

30.     Defendants' failure and continued refusal to remit the payments made on the Accounts Receivable to Dreyer's and Defendants' likely use or disposition of the funds for its own benefit has unjustly enriched and continues to unjustly enrich Defendants to the detriment of Dreyer's.

31.     A constructive trust should be imposed over the payments made on the Accounts Receivable to prevent such unjust enrichment and to prevent the possible disposition or dissipation by Defendants of those funds pending final judgment in this action.

## COUNT FOUR
### Money Had and Received

32.     Dreyer's incorporates by reference paragraphs 1-31 as if fully set forth herein

NYLIB-426009.3-EBKIRSCH 5/1/07 2:50 PM

33.     Defendants received monies rightfully belonging to Dreyer's by accepting into the Lockbox certain post-closing payments on Accounts Receivable that had been purchased by Dreyer's pursuant to the APA.

34.     The Defendants are holding or otherwise disposing of payments made on the Accounts Receivable upon information and belief, for their own benefit, and not for the benefit of Dreyer's as prescribed by the APA.

35.     Because the post-Closing payments made on the Accounts Receivable never belonged to the Defendants and the Defendants have an obligation to pay those funds to Dreyer's, the Defendants must not be permitted, in equity and good conscience, to maintain possession of those funds and should be ordered to immediately remit the such funds to Dreyer's.

## COUNT FIVE
### Conversion

36.     Dreyer's incorporates by reference paragraphs 1-35 as if fully set forth herein.

37.     The APA unambiguously provides that the Accounts Receivable here at issue were among the assets purchased by Dreyer's pursuant to the APA and paid for at the Closing on January 24, 2007.

38.     The funds received from the Accounts Receivable are specifically identifiable amounts. Each such payment wired into the Lockbox is expressly identified by the payor and the reference to the invoice or invoices which it remits.

39.     The Defendants were authorized to collect the post-closing Accounts Receivable into the Lockbox in trust for Dreyer's as contemplated by the APA, including an obligation to remit the amounts promptly to Dreyer's. Despite the numerous demands that the amounts be

- 8 -

paid, Defendants have converted the amounts clearly owed Dreyer's in an attempt to force Dreyer's to make concessions in other disputes unrelated to the APA.

40.     As a direct and proximate result of Defendants' conversion of funds, Dreyer's has incurred money damages in an amount to be proven at trial, but in all events, a sum or value far in excess of $1,000,000 exclusive of interest and costs. Dreyer's also seeks pre-judgment interest on all damages incurred.

41.     Defendants' conversion of the proceeds of the payments made on the Accounts Receivable, is, among other things, calculated to take advantage of Dreyer's vulnerable position (i.e., its immediate need for the cash flow and total lack of access to the proceeds at issue) in order to extract other unrelated financial and business concessions from Dreyer's. Defendants' unlawful actions are intentional and taken in wanton and reckless disregard for Dreyer's clear rights in order to maximize the value of Defendants' remaining businesses for final disposition to their principals in connection with their winding up.  Such willful and wrongful conduct is egregious and reprehensible and warrants an award of punitive damages.

NYLIB-426009.3-EBKIRSCH 5/1/07 2:50 PM

## PRAYER FOR RELIEF

WHEREFORE Dreyer's respectfully requests judgment in its favor and against Defendants as follows:

1.     An Order entering judgment in favor of Dreyer's and against Defendants on all claims;

2.     An Order directing Defendants to specifically perform their obligations under the APA, including but not limited to, paying over all Accounts Receivable received by Defendants to date;

3.     An Order that Dreyer's be awarded compensatory, consequential and punitive damages, as well as costs and expenses, together with pre-judgment interest, in an amount to be determined at trial;

4.     An Order temporarily restraining and preliminarily and permanently enjoining Defendants, their officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or participation with Defendants, jointly and severally, from continuing to withhold or otherwise dispose of the proceeds from the Accounts Receivable;

5.     An Order imposing a constructive trust over all amounts paid on account of the Accounts Receivable purchased by Dreyer's received by Defendants;

6.     An Order issuing an order of attachment over all amounts paid on account of the Accounts Receivable purchased by Dreyer's received by Defendants;

7.     An Order directing Defendants to provide Dreyer's with an accounting of all payments on account of the Accounts Receivable received post-Closing;

8.    An Order that Defendants pay Dreyer's for the costs of this action and its

reasonable attorneys' fees.

9.    An Order granting Dreyer's such other and further relief as this Court deems

equitable and proper.

DATED:        May 1, 2007

*Emily Kirsch*

Scott D. Baker
Emily B. Kirsch (EBK 4216)
REED SMITH LLP
599 Lexington Avenue
New York, NY  10022-7650
Telephone:    212.521.5400
Facsimile:    212.521.5450
sbaker@reedsmith.com
ekirsch@reedsmith.com

*Attorneys for Plaintiff*

NYLIB-426009.3-EBKIRSCH  5/1/07 2:50 PM