Exhibit
A

Indemnification Claim for all Seller Indemnifiable Losses for which indemnity is sought on or before the first anniversary of the Closing Date.

(d)     The provisions of Sections 11.4(b) and (c) above shall not limit, in any manner, Purchaser's obligation to indemnify members of the Seller Group for Seller Indemnifiable Losses arising from (i) fraud, willful misconduct or intentional misrepresentation on the part of Purchaser, or (ii) Purchaser's failure to perform and discharge all Assumed Liabilities on and after the Closing Date and pay any amounts contemplated by Sections 2.6 and 12.6.

(e)     Purchaser shall not be liable for damages in excess of the actual damages suffered by a member of the Seller Group as a result of the act, circumstance or condition for which indemnification is sought, net of any insurance proceeds received by the Seller Group.

11.5     Procedures for Indemnification.

(a)     As used in this Article XI, the term "Indemnitor" means the party against whom indemnification hereunder is sought, and the term "Indemnitee" means the party seeking indemnification hereunder.

(b)     A claim for indemnification hereunder (an "Indemnification Claim") shall be made by Indemnitee by delivery of a written notice to Indemnitor requesting indemnification and specifying the basis on which indemnification is sought in reasonable detail (and shall include relevant documentation related to the Indemnification Claim), the amount of the asserted Purchaser Indemnifiable Losses or Seller Indemnifiable Losses, as the case may be, and, in the case of a Third Party Claim, containing (by attachment or otherwise) such other information as Indemnitee shall have concerning such Third Party Claim.

(c)     If the Indemnification Claim involves a Third Party Claim, the procedures set forth in Section 11.5 hereof shall be observed by Indemnitee and Indemnitor.

(d)     If the Indemnification Claim involves a matter other than a Third Party Claim, Indemnitor shall have thirty (30) days to object to such Indemnification Claim by delivery of a written notice of such objection to Indemnitee specifying in reasonable detail the basis for such objection. Failure to timely so object shall constitute a final and binding acceptance of the Indemnification Claim by Indemnitor, and the Indemnification Claim shall thereafter be paid by Indemnitor in accordance with Section 11.5(e) hereof. If an objection is timely delivered by Indemnitor and the dispute is not resolved within twenty (20) business days from the delivery of such objection (the "Negotiation Period"), such dispute shall be resolved by arbitration in accordance with the provisions of the Escrow Agreement.

(e)     Upon determination of the amount of an Indemnification Claim, whether by (i) an agreement between Indemnitor and Indemnitee, (ii) an arbitration award, or (iii) a final judgment (after expiration of all periods for appeal of such judgment) or other final nonappealable order, Indemnitor shall pay the amount of such Indemnification Claim by check or wire transfer within ten (10) days of the date the Indemnitor is notified in writing of such amount.

11.6    <u>Defense of Third Party Claims</u>.  Should any claim be made, or suit or proceeding (including, without limitation, a binding arbitration or an audit by any taxing authority) be instituted against Indemnitee which, if prosecuted successfully, would be a matter for which Indemnitee is entitled to indemnification under this Agreement (a "<u>Third Party Claim</u>"), the obligations and liabilities of the parties hereunder with respect to such Third Party Claim shall be subject to the following terms and conditions:

(a)    Indemnitee shall give Indemnitor written notice of any such claim promptly after receipt by Indemnitee of notice thereof, and Indemnitor will undertake control of the defense thereof by counsel of its own choosing reasonably acceptable to Indemnitee. Indemnitee may participate in the defense through its own counsel at its own expense.  The assumption of the defense of any Third Party Claim by Indemnitor shall be an acknowledgment by Indemnitor that such Third Party Claim is subject to indemnification under the provisions of this Article XI and that such provisions are binding on Indemnitor.  If, however, Indemnitor fails or refuses to diligently undertake the defense of such Third Party Claim within ten (10) days after written notice of such claim has been delivered to Indemnitor by Indemnitee, Indemnitee shall have the right to undertake the defense, compromise and, subject to Section 11.7, settlement of such Third Party Claim with counsel of its own choosing.  Failure of Indemnitee to furnish written notice to Indemnitor of a Third Party Claim shall not release Indemnitor from Indemnitor's obligations hereunder, except to the extent Indemnitor is prejudiced by such failure.

(b)    Indemnitee and Indemnitor shall cooperate with each other in all reasonable respects in connection with the defense of any Third Party Claim, including (at Indemnitor's cost) making available records relating to such claim and furnishing employees of Indemnitee as may be reasonably necessary for the preparation of the defense of any such Third Party Claim or for testimony as witness in any proceeding relating to such claim.

11.7    <u>Settlement of Third Party Claims</u>.  Unless Indemnitor has failed to fulfill its obligations under this Article XI, no settlement by Indemnitee of a Third Party Claim shall be made without the prior written consent by or on behalf of Indemnitor, which consent shall not be unreasonably withheld or delayed.  If Indemnitor has assumed the defense of a Third Party Claim as contemplated by Section 11.6(a), no settlement of such Third Party Claim may be made by Indemnitor without the prior written consent by or on behalf of Indemnitee, which consent shall not be unreasonably withheld or delayed.  In the event of any dispute regarding the reasonableness of a proposed settlement as it relates solely to the payment of money, the party that will bear the larger financial loss resulting from such settlement shall make the final determination in respect thereto, which determination shall be final and binding on all involved parties.

ARTICLE XII

GENERAL

12.1    <u>Governing Law</u>.  It is the intention of the parties hereto that the internal laws of the State of New York (irrespective of its choice of law principles) shall govern the validity of this Agreement and the Ancillary Documents, the construction of terms, and the interpretation and enforcement of the rights and duties of the parties hereto and thereto.  Each party submits to

the jurisdiction of any state or federal court sitting in New York City, New York, in any action or proceeding arising out of or relating to this Agreement and the Ancillary Documents and agrees that all claims in respect of the action or proceeding may be heard and determined in any such court. Each party also agrees not to bring any action or proceeding arising out of or relating to this Agreement or the Ancillary Documents in any other court. Each party waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety, or other security that might be required of any other party with respect thereto. Any party may make service on any other party by sending or delivering a copy of the process to the party to be served at the address and in the manner provided for the giving of notices in Section 12.10.

    12.2   <u>Assignment; Binding upon Successors and Assigns</u>.  None of the parties hereto may assign any of its rights or obligations hereunder (whether by operation of law or otherwise) without the prior written consent of the other parties; provided, however, that Purchaser may assign its rights under this Agreement (i) to any Affiliate of Purchaser, provided that Purchaser guarantees the obligations of such Affiliate hereunder, or (ii) to any successor of Purchaser through any merger or consolidation, or purchase of all or substantially all of Purchaser's stock or all or substantially all of Purchaser's assets.  This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns.

    12.3   <u>Severability</u>.  If any provision of this Agreement, or the application thereof, becomes or is declared by a court of competent jurisdiction to be illegal, void or unenforceable, the remainder of this Agreement will continue in full force and effect and the application of such provision to other persons or circumstances shall be interpreted so as best to reasonably effect the intent of the parties hereto.  The parties further agree to replace such illegal, void or unenforceable provision of this Agreement with a valid and enforceable provision which will achieve, to the extent possible, the economic, business and other purposes of the illegal, void or unenforceable provision.

    12.4   <u>Entire Agreement</u>.  This Agreement, the Ancillary Documents, the Schedules hereto and thereto, the Confidentiality Agreement, the documents and instruments and other agreements among the parties hereto referenced herein and therein, and the exhibits thereto, constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and thereof and supersede all prior and contemporaneous agreements or understandings, inducements or conditions, express or implied, written or oral, between the parties with respect hereto and thereto including, without limitation, that certain letter of intent between the parties dated December 21, 2006.

    12.5   <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one and the same instrument.

    12.6   <u>Expenses</u>.

        (a)    The parties shall each pay their own legal, accounting and financial advisory fees and other out-of-pocket expenses incurred incident to the negotiation, preparation

and carrying out of this Agreement and the transactions herein contemplated, whether or not the transactions contemplated hereby are consummated.

(b)    Each party shall indemnify the other against, and agrees to hold the other harmless from, all liabilities and expenses (including reasonable attorneys' fees and costs) in connection with any claim by any person for compensation as a broker, finder or in any similar capacity, by reason of services allegedly rendered to the indemnifying party in connection with the transactions contemplated hereby.

12.7    Other Remedies.  Except as otherwise provided herein, any and all remedies herein expressly conferred upon a party shall be deemed cumulative with and not exclusive of any other remedy conferred hereby or by law on such party, and the exercise of any one remedy shall not preclude the exercise of any other.

12.8    Amendment.  Any term or provision of this Agreement may be amended by a written instrument signed by Purchaser and Seller.

12.9    Waiver.  Each party hereto may, by written notice to the other party:  (i) waive any of the conditions to its obligations hereunder or extend the time for the performance of any of the obligations or actions of the other; (ii) waive any inaccuracies in the representations of the other contained in this Agreement or in any documents delivered pursuant to this Agreement; (iii) waive compliance with any of the covenants of the other contained in this Agreement; or (iv) waive or modify performance of any of the obligations of the other.  Except as specifically contemplated by this Agreement, no action taken pursuant to this Agreement, including without limitation any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, condition or agreement contained herein.  Waiver of the breach of any one or more provisions of this Agreement shall not be deemed or construed to be a waiver of other breaches or subsequent breaches of the same provisions.

12.10    Notices.  All notices and other communications hereunder will be in writing and will be deemed given (i) upon receipt if delivered personally (or if mailed by registered or certified mail), (ii) the next Business Day after dispatch if sent by nationally recognized overnight delivery service, (iii) upon dispatch if transmitted by facsimile (and confirmed by a copy delivered in accordance with clause (i) or (ii)), properly addressed to the parties at the following addresses:

Sellers:        Eskimo Pie Corporation
                Integrated Brands, Inc.
                c/o CoolBrands International Inc.
                210 Shields Court
                Markham, ON  L3R 8V2
                Canada
                Attention:  Michael Serruya, Chief Executive Officer

                Facsimile No.: (905) 479-5235

|                                                         |                                                                                                                                                     |
|---------------------------------------------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------|
| with a copy to (which shall not constitute notice):     | Ellenoff Grossman & Schole LLP<br>370 Lexington Avenue<br>New York, New York  10017<br>Attention:  Stuart Neuhauser, Esq.                            |
|                                                         | Facsimile No.: (212) 370-7889                                                                                                                        |
| Purchaser:                                              | Dreyer's Grand Ice Cream, Inc.<br>5929 College Avenue<br>Oakland, California  94618<br>Attention:  Vice President & General Counsel                  |
|                                                         | Facsimile No.: (510) 450-4592                                                                                                                        |
| with a copy to (which shall not constitute notice):     | DLA Piper US LLP<br>2000 University Avenue<br>East Palo Alto, California 94303<br>Attention:  Joe C. Sorenson, Esq.                                   |
|                                                         | Facsimile No.: (650) 833-2001                                                                                                                        |

Either party may change its address for such communications by giving notice thereof to the other party in conformity with this Section.

12.11   <u>Construction and Interpretation of Agreement</u>.

(a)     This Agreement has been negotiated by the parties hereto and their respective attorneys, and the language hereof shall not be construed for or against either party.

(b)     The titles and headings herein are for reference purposes only and shall not in any manner limit the construction of this Agreement, which shall be considered as a whole.

(c)     Any reference to a "material adverse effect" with respect to any entity or group of entities means any event, change or effect that is or is reasonably capable of becoming materially adverse to the business, assets (including intangible assets), financial condition, properties, liabilities, results of operations or prospects of such entity and its subsidiaries, taken as a whole, except for, individually or in the aggregate, (i) any event, change or effect affecting as a whole (x) the foodservice, dessert, ice cream or frozen novelty business in general, or (y) the financial and banking markets in general, (ii) any event, change or effect resulting from the execution of this Agreement or any Ancillary Documents or the public announcement regarding the execution or consummation of the transactions contemplated by this Agreement, or (iii) any event, change or effect resulting from acts of war, terrorism, national catastrophe or national emergencies; <u>provided</u>, <u>however</u>, that any event, change or effect described in the foregoing clause (i) (x) above shall not constitute or give rise to a material adverse effect only if and to the extent that such event, change or effect does not have a disproportionate effect on the Sellers as compared to other persons in the industries in which the Sellers operate.

(d)    Whenever the term "enforceable in accordance with its terms" or like expression is used, it is understood that excepted therefrom are any limitations on enforceability under applicable bankruptcy, insolvency, reorganization, moratorium or similar laws of general application affecting the enforcement of creditor's rights or by principles of public policy or general equitable principles or the exercise of judicial discretion in accordance with such principles.

(e)    Any reference to a party's "knowledge" means such party's actual knowledge after reasonable inquiry of its current or past directors, officers and other employees of such party reasonably believed to have knowledge of such matters, including without limitation David Stein, Michael Serruya and Gary Stevens.

(f)    Whenever the term "ordinary course of business" or like expression is used, it shall mean the ordinary course of business consistent with past custom and practice (including with respect to quantity and frequency).

(g)    Any reference to the "prospects" of the, Business, or to the Business "as currently proposed to be conducted," means such prospects or business without taking into account the transactions contemplated by this Agreement or any changes to the Business that are initiated by Purchaser thereafter.

12.12    No Joint Venture.  Nothing contained in this Agreement shall be deemed or construed as creating a joint venture or partnership between any of the parties hereto.  No party is by virtue of this Agreement authorized as an agent, employee or legal representative of any other party.  No party shall have the power to control the activities and operations of any other and their status is, and at all times, will continue to be, that of independent contractors with respect to each other.  No party shall have any power or authority to bind or commit any other.  No party shall hold itself out as having any authority or relationship in contravention of this Section.

12.13    Absence of Third Party Beneficiary Rights.  No provisions of this Agreement are intended, nor shall be interpreted, to provide or create any third party beneficiary rights or any other rights of any kind in any client, customer, affiliate, stockholder, partner of any party hereto or any other person or entity unless specifically provided otherwise herein, and, except as so provided, all provisions hereof shall be personal solely between the parties to this Agreement.

12.14    **WAIVER OF JURY TRIAL.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY FOR ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF ANY PARTY HERETO IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF.**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

DREYER'S GRAND ICE CREAM, INC.

By: _____

Title: _____
   Timothy F Kahn
   Chief Operating Officer

INTEGRATED BRANDS, INC.

By: _____

Title: _____

ESKIMO PIE CORPORATION

By: _____

Title: _____

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

DREYER'S GRAND ICE CREAM, INC.

By: _____

Title: _____


INTEGRATED BRANDS, INC.

By: _____

Title: _President / CEO_____


ESKIMO PIE CORPORATION

By: _____

Title: _President / CEO_____

**EXHIBIT A**

**Co-Pack Agreement**

**SEE TAB 32**

PA\10485202.7
320629-8

**EXHIBIT B**

Escrow Agreement

**SEE TAB 33**

PA\10485202.7
320629-8

## ESCROW AGREEMENT

This ESCROW AGREEMENT (this "Escrow Agreement") is made and entered into as of January 24, 2007 by and among Dreyer's Grand Ice Cream, Inc., a Delaware corporation ("Purchaser"), U.S. Bank, National Association, a banking association (the "Escrow Agent"), as escrow agent, Integrated Brands, Inc., a New Jersey corporation ("Integrated Brands"), Eskimo Pie Corporation, a Virginia corporation ("Eskimo Pie") (Integrated Brands and Eskimo Pie, individually, a "Seller," and collectively, the "Sellers").

Capitalized terms used but not otherwise defined in this Escrow Agreement shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

### RECITALS

WHEREAS, Purchaser and the Sellers have entered into an Asset Purchase Agreement as of the date hereof (the "Purchase Agreement"), pursuant to which Purchaser will acquire certain assets from the Sellers (the "Acquisition");

WHEREAS, in accordance with the Purchase Agreement, the parties desire to establish an escrow to provide a mechanism through which Purchaser and certain related parties may seek indemnification from the Sellers for any Indemnifiable Losses they sustain or incur; and

WHEREAS, the Escrow Agent is willing to act as the escrow agent under this Escrow Agreement to hold the aggregate amount of One Million Thirty-Seven Thousand Dollars ($1,037,000), along with any interest accumulated thereon, and as adjusted for any deliveries of such monies made pursuant to this Agreement (collectively, the "Escrow Funds") in an escrow account (the "Escrow Account").

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, and the representations, warranties, covenants and agreements set forth in this Escrow Agreement and the Purchase Agreement, the parties hereto agree as follows:

### ARTICLE I

### ESCROW PROVISIONS

1.1    Establishment of Escrow Fund.  Simultaneously with the execution of this Escrow Agreement, Purchaser has delivered the Escrow Funds to Escrow Agent to be held in the Escrow Account.  Absent joint written direction from Purchaser and the Sellers to the contrary, the Escrow Funds shall be invested in a U.S. Bank Money Market Account, as further described in Schedule I hereof, and any interest paid on the Escrow Account shall become part of the Escrow Funds.  The Escrow Funds shall be held by the Escrow Agent in escrow subject to the terms and conditions hereinafter set forth.

1.2    Maintenance of the Escrow.  The Escrow Agent shall maintain records showing each Seller's Proportionate Interest (as defined below) in the Escrow Account, if any, and shall

adjust each Seller's account to reflect distributions from, and additions or substitutions to, the Escrow Funds held for potential distribution to the account of such Seller in the Escrow Account, if any. For purposes of this Escrow Agreement, "Proportionate Interest" shall mean each Seller's respective potential interest in the Escrow Funds, if any, which shall be set forth on Schedule II hereto and be provided to Escrow Agent by Sellers on the Closing Date, and as adjusted proportionately for any interest paid on the Escrow Account. The Escrow Agent is hereby authorized to effect any transfer of Escrow Funds required by this Escrow Agreement.

1.3    Rights of Ownership. No Escrow Funds or any interest therein may be pledged, sold, assigned or transferred, including by operation of law, by either Seller or be taken or reached by any legal or equitable process in satisfaction of any debt or other liability of such Seller, prior to the delivery to such Seller of such Seller's respective portion of the Escrow Funds as provided herein, unless specifically agreed to in writing by Purchaser.

1.4    Indemnification; Notice of Claim. Upon receipt by the Escrow Agent on or before the termination of the Escrow Period (defined below) of a certificate signed by any officer of Purchaser (an "Officer's Certificate") stating that an Indemnifiable Loss exists with respect to the indemnification obligations of the Sellers set forth in the Purchase Agreement, and specifying in reasonable detail the individual items of such Indemnifiable Loss included in the amount so stated, the date each such item was paid, or properly accrued or arose, and the nature of the misrepresentation, breach of warranty, covenant or claim to which such item is related, the Escrow Agent shall, subject to the provisions of Section 1.5 below, deliver to Purchaser out of the Escrow Account, as promptly as practicable, Escrow Funds held in the Escrow Account having a value equal to such Damages.

1.5    Objection to Claim.

(a)    Written Objection. At the time of delivery of any Officer's Certificate to the Escrow Agent, Purchaser shall deliver a duplicate copy of such Officer's Certificate to each Seller and its counsel. For a period of thirty (30) days after such delivery, the Escrow Agent shall make no delivery of Escrow Funds unless the Escrow Agent shall have received written authorization from both of the Sellers to make such delivery. After the expiration of such thirty (30) day period, the Escrow Agent shall make delivery of the Escrow Funds from the Escrow Account in the amount specified in the Officer's Certificate, provided that no such payment or delivery may be made if both of the Sellers shall object in a written statement to the claim made in the Officer's Certificate, and such statement shall have been delivered to the Escrow Agent and to Purchaser prior to the expiration of such thirty (30) day period.

(b)    Purchaser Response. In case the Sellers shall so object in writing to any claim or claims by Purchaser (or portion(s) thereof) made in any Officer's Certificate (a "Contested Claim"), Purchaser shall have thirty (30) days to respond in a written statement to the objection of the Sellers. If after such thirty (30) day period there remains a dispute as to any claims, the Sellers and Purchaser shall attempt in good faith for sixty (60) days to agree upon the rights of the respective parties with respect to each of such claims. If the Sellers and Purchaser should so agree, a memorandum setting forth such agreement shall be prepared and signed by the parties and shall be furnished to the Escrow Agent. The Escrow Agent shall be entitled to rely on any such memorandum and shall distribute the Escrow Funds from the Escrow Account in

accordance with the terms thereof. If in the event Sellers and Purchaser are not able to so agree, such dispute shall be resolved in accordance with the terms of Section 1.9 hereof. The Escrow Agent shall be entitled to rely upon any judgment of a court of competent jurisdiction and shall distribute the Escrow Funds from the Escrow Account in accordance with the terms thereof.

1.6    Distribution of Escrow Fund; Termination of Escrow.

(a)    The Escrow Account shall be in existence immediately following the Effective Time and shall terminate at 5:00 p.m., Pacific time, on the twelve-month anniversary of the Closing Date (the "Escrow Period"); provided, however, that a portion of the Escrow Funds that is necessary to satisfy any unsatisfied claims specified in any Officer's Certificate delivered to the Escrow Agent prior to termination of the Escrow Period with respect to facts and circumstances existing prior to or on the twelve month anniversary of the Closing Date, shall remain in the Escrow Account until such claims have been resolved in accordance with Section 1.5.

(b)    Within ten (10) business days after the termination of the Escrow Period (the "Release Date"), the Escrow Agent shall release from escrow to the Sellers their Proportionate Interests in the Escrow Funds in the Escrow Account, less with respect to each such Seller (i) such Seller's pro rata portion of any liability described in an Officer's Certificate delivered to the Escrow Agent in accordance with Section 1.4 and (ii) such Seller's pro rata portion of any liability described in an Officer's Certificate delivered to the Escrow Agent in accordance with Section 1.6(a) with respect to any pending but unresolved indemnification claims of a member of the Purchaser Group. Any Escrow Funds held as a result of clause (i) or (ii) of the preceding sentence shall be released to the Sellers or released to Purchaser (as appropriate) promptly upon resolution of each specific indemnification claim involved. Escrow Funds held in escrow shall be released to the respective Sellers in accordance with their Proportionate Interests.

1.7    Term of Escrow Agreement. This Escrow Agreement shall terminate upon the distribution by the Escrow Agent of all Escrow Funds held in the Escrow Account.

1.8    Escrow Agent.

(a)    Duties. Except as provided in this Escrow Agreement and except for Escrow Agent's willful misconduct or gross negligence, Escrow Agent shall have no liability or obligation with respect to the Escrow Funds. Escrow Agent's sole responsibility shall be for the safekeeping, investment, and disbursement of the Escrow Funds in accordance with the terms of this Escrow Agreement. Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by the person or parties purporting to sign the same and to conform to the provisions of this Escrow Agreement. In no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Escrow Funds, or to appear in, prosecute or

defend any such legal action or proceedings. Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, and shall incur no liability and shall be fully protected from any liability whatsoever in acting in accordance with the opinion or instruction of such counsel. Purchaser shall promptly pay, upon demand, the reasonable fees and expenses of any such counsel.

(b)    Indemnification. From and at all times after the date of this Escrow Agreement, Purchaser and Sellers shall, to the fullest extent permitted by law and to the extent provided herein, indemnify and hold harmless Escrow Agent against any and all actions, claims (whether or not valid), losses, damages, liabilities, costs and expenses of any kind or nature whatsoever (including, without limitation, reasonable attorneys' fees, costs and expenses) incurred by or asserted against Escrow Agent from and after the date hereof, whether direct, indirect or consequential, as a result of or arising from or in any way relating to any claim, demand, suit, action or proceeding (including any inquiry or investigation) by any person, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person under any statute or regulation, including, but not limited to, any federal or state securities laws, or under any common law or equitable cause or otherwise, arising from or in connection with the negotiation, preparation, execution, performance or failure of performance of this Escrow Agreement or any transactions contemplated herein, whether or not the Escrow Agent is a party to any such action, proceeding, suit or the target of any such inquiry or investigation; provided, however, that the Escrow Agent shall not have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted solely from the gross negligence or willful misconduct of the Escrow Agent. If any such action or claim which Escrow Agent is entitled to indemnification hereunder shall be brought or asserted against the Escrow Agent, the Escrow Agent shall promptly notify Purchaser in writing, and Purchaser shall assume the defense thereof, including the employment of counsel and the payment of all expenses. The Escrow Agent shall, in its sole discretion, have the right to employ separate counsel in any such action and to participate in the defense thereof, and the fees and expenses of such counsel shall be paid by the Escrow Agent unless (i) Purchaser agrees to pay such fees and expenses, or (ii) Purchaser shall fail to assume the defense of such action or proceeding or shall fail, in the reasonable discretion of Escrow Agent, to employ counsel satisfactory to the Escrow Agent in any such action or proceeding, or (iii) the named parties to any such action or proceeding (including any impleaded parties) include both Escrow Agent and Purchaser, and Escrow Agent shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or additional to those available to Purchaser. All such fees and expenses payable by Purchaser pursuant to the foregoing sentence shall be paid from time to time as incurred, both in advance of and after the final disposition of such action or claim. All of the foregoing losses, damages, costs and expenses of Escrow Agent shall be payable by Purchaser upon demand by Escrow Agent. The obligations of Purchaser under this Section 1.8(b) shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent. Nothing contained in this Section 1.8 shall impair, limit, modify or affect the rights of the Sellers and Purchaser, as between themselves.

(c)    Resignation of Escrow Agent. Escrow Agent may resign from the performance of its duties hereunder at any time by giving thirty (30) days' prior written notice to

Purchaser and the Sellers or may be removed, with or without cause, by Purchaser and the Sellers, acting jointly, at any time by the giving of ten (10) days' prior written notice to Escrow Agent. Such resignation or removal shall take effect upon the appointment of a successor Escrow Agent as provided herein. Upon any such notice of resignation or removal, Purchaser and the Sellers mutually shall agree upon and appoint a successor Escrow Agent hereunder, which shall be a commercial bank, trust company or other financial institution with a combined capital and surplus in excess of $100,000,000, unless waived by Purchaser and the Sellers. Upon the acceptance in writing of any appointment as Escrow Agent hereunder by a successor Escrow Agent, such successor Escrow Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Escrow Agent, and the retiring Escrow Agent shall be discharged from its duties and obligations under this Escrow Agreement, but shall not be discharged from any liability for actions taken as Escrow Agent hereunder prior to such succession. After any retiring Escrow Agent's resignation or removal, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement.

(d)     Receipt.  By its execution and delivery of this Escrow Agreement, Escrow Agent acknowledges receipt of the Escrow Funds.

(e)     Fees of Escrow Agent.  All fees and costs of the Escrow Agent, including the normal and usual costs of administering the Escrow Account, as set forth on Schedule III hereto, shall be paid by Purchaser.  In the event that the conditions of this Escrow Agreement are not promptly fulfilled or that the Escrow Agent renders any service hereunder not provided for herein or that there is any assignment of any interest in the subject matter of the Escrow Funds or modification hereof, the Escrow Agent shall be reasonably compensated for such extraordinary services by the party that is responsible for or requests such services.

1.9     Arbitration.

(a)     Each Contested Claim will be settled by binding arbitration pursuant to this Section 1.9 unless otherwise agreed by the Sellers and Purchaser. Any portion of a claim for an Indemnifiable Loss which is not contested shall be settled as set forth in Section 1.5(a) hereof. The final decision of the arbitrator shall be furnished to the Escrow Agent, the Sellers and Purchaser in writing and will constitute a conclusive determination of the issue in question, binding upon the Sellers and Purchaser and shall not be contested or appealed by any of them. After notice that a claim is contested by the Sellers, the Escrow Agent will continue to hold in the Escrow Fund property having a value sufficient to cover such Contested Claim until the earlier of (i) execution of a settlement agreement by the Sellers and Purchaser setting forth a resolution of the Contested Claim, or (ii) receipt of a copy of the final award of the arbitrator.

(b)     Any Contested Claim shall be settled by arbitration in New York City, New York, before one arbitrator. The arbitration shall be administered by JAMS and, except as herein specifically stated, in accordance with the Streamlined Arbitration Rules and Procedures of JAMS ("JAMS Rules") then in effect. However, in all events, these arbitration provisions shall govern over any conflicting rules which may now or hereafter be contained in the JAMS Rules. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction over the subject matter thereof. The arbitrator shall have the authority to

grant any equitable and legal remedies that would be available in any judicial proceeding instituted to resolve a Contested Claim.

        (c)     Any legal fees or other such expenses incurred by the Sellers in challenging a Contested Claim shall be borne by the Sellers and any legal fees or other such expenses incurred by the Purchaser in a Contested Claim shall be borne by the Purchaser. Notwithstanding the foregoing, in the event that the Sellers prevail in challenging a Contested Claim, as determined by the arbitrator, the Purchaser shall pay to the Sellers an amount equal to the legal fees, costs and expenses awarded to the Sellers by the arbitrator by delivering payment therefor to the Sellers within twenty (20) days following receipt of the arbitrator's decision. If a member of the Purchaser Group prevails in a challenge by the Sellers of a Contested Claim, as determined by the arbitrator, the legal fees, costs and expenses incurred by a member of the Purchaser Group shall be paid to the Purchaser from the Escrow Funds in accordance with the provisions of this Agreement.

ARTICLE II

GENERAL PROVISIONS

    2.1    <u>Notices</u>. All notices and other communications hereunder shall be in writing and shall be deemed duly delivered: (i) upon receipt if delivered personally; (ii) three (3) business days after being mailed by registered or certified mail, postage prepaid, return receipt requested; (iii) one (1) business day after it is sent by commercial overnight courier service; or (iv) upon transmission if sent via facsimile with confirmation of receipt to the parties at the following address (or at such other address for a party as shall be specified upon like notice):

        If to the Purchaser:

        Dreyer's Grand Ice Cream, Inc.
        5929 College Avenue
        Oakland, California 94618
        Attention:  General Counsel
        Fax:    510.450.4592
        Tel:    510.601.4380

        with a copy (which shall not constitute notice) to:

        DLA Piper US LLP
        2000 University Avenue
        East Palo Alto, California  94303-2248
        Attention: Joe C. Sorenson, Esq.
        Fax:    650.833.2001
        Tel:    650.833.2000

If to the Escrow Agent:

U.S. Bank, National Association
One California Street, Suite 2100
San Francisco, California 94111
Attention: Michael P. Susnow
Fax:    415.273.4591
Tel:    415.273.4563

If to the Sellers:

Eskimo Pie Corporation
Integrated Brands, Inc.
c/o CoolBrands International Inc.
210 Shields Court
Markham, ON L3R 8V2
Canada
Attention: Michael Serruya, Chief Executive Officer

Fax:    905.479.5235
Tel:    905.479.8762

With a copy (which shall not constitute notice) to:

Ellenoff Grossman & Schole LLP
370 Lexington Avenue
New York, New York 10017
Stuart Neuhauser, Esq.
Fax:    212.370.7889
Tel:    212.370.1300

or at such other address or number for a party as shall be specified by like notice. Any notice which is delivered in the manner provided herein shall be deemed to have been duly given to the party to whom it is directed upon actual receipt by such party or its agent.

2.2    Parties Bound by Agreement. The terms, conditions and obligations of this Escrow Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns. Except as hereinafter provided, without the prior written consent of the other parties, no party may assign such party's rights, duties or obligations hereunder or any part thereof to any other person or entity.

2.3    Number; Gender. Whenever the context so requires, the singular number shall include the plural and the plural shall include the singular, and the gender of any pronoun shall include the other genders.

2.4    Headings. The headings of the Articles and Sections of this Escrow Agreement are inserted for convenience only and shall not be deemed to constitute part of this Escrow Agreement or to affect the construction hereof.

2.5    Modification and Waiver. Any of the terms or conditions of this Escrow Agreement may be waived in writing at any time by the party which is entitled to the benefits thereof. No waiver of any of the provisions of this Escrow Agreement shall be deemed to or shall constitute a waiver of any other provision hereof. This Escrow Agreement may be modified as amended only with the written consent of Purchaser, each of the Sellers and the Escrow Agent.

2.6    Construction. This Escrow Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to the laws that may otherwise govern under any applicable conflicts of law principles thereof. No provision of this Escrow Agreement shall be construed against or interpreted to the disadvantage of any party by any court or other governmental or judicial authority or by any board of arbitrators by reason of such party or its counsel having or being deemed to have structured or drafted such provision. Unless otherwise expressly provided herein, all references in this Escrow Agreement to Section(s) shall refer to the Section(s) of this Escrow Agreement.

2.7    No Limitation. The parties agree that the rights and remedies of any party under this Escrow Agreement shall not operate to limit any other rights and remedies otherwise available to any party under the Purchase Agreement or otherwise.

2.8    Severability. In the event that any provision of this Escrow Agreement, or the application thereof, becomes or is declared by a court of competent jurisdiction to be illegal, void or unenforceable, the remainder of this Escrow Agreement will continue in full force and effect and the application of such provision to other persons or circumstances will be interpreted so as reasonably to effect the intent of the parties hereto. The parties further agree to replace such void or unenforceable provision of this Escrow Agreement with a valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such void or unenforceable provision.

2.9    Purchase of Securities. The Escrow Agent and any shareholder, director, officer or employee of the Escrow Agent may buy, sell, and deal in any of the securities of Purchaser and become pecuniarily interested in any transaction in which Purchaser may be interested, and contract and lend money to Purchaser and otherwise act as fully and freely as though it were not Escrow Agent under this Escrow Agreement. Nothing herein shall preclude the Escrow Agent from acting in any other capacity for Purchaser or for any other entity.

2.10    Exclusions. Escrow Agent is not a party to, nor is it bound by, nor need it give consideration to the terms or provisions of, any agreement or undertaking among the undersigned or any of them, or between the undersigned or any of them and other persons, including, but not limited to, the Purchase Agreement or any agreement or undertaking which may be evidenced by or disclosed by the Escrow Fund, it being the intention of the parties that Escrow Agent assent to and be obligated to give consideration only to the terms and provisions this Escrow Agreement.

2.11    <u>Absence of Third Party Beneficiary Rights</u>.  No provisions of this Escrow Agreement are intended, nor shall be interpreted, to provide or create any third party beneficiary rights or any other rights of any kind in any client, customer, affiliate, partner of any party hereto or any other person or entity unless specifically provided otherwise herein, and, except as so provided, all provisions hereof shall be solely between the parties to this Escrow Agreement.

2.12    <u>Tax Reporting Documentation</u>.  Purchaser and the Sellers agree to provide the Escrow Agent with certified tax identification numbers for each of them by furnishing appropriate forms W-9 (or Forms W-8, in the case of non-U.S. persons) and other forms and documents that the Escrow Agent may reasonably request (collectively, "<u>Tax Reporting Documentation</u>") to the Escrow Agent on or before the date hereof.  The parties hereto understand that, if such Tax Reporting Documentation is not so certified to the Escrow Agent, the Escrow Agent may be required by the Internal Revenue Code, as it may be amended from time to time, to withhold a portion of the Escrow Fund or any interest or other income earned on the investment of monies or other property held by the Escrow Agent pursuant to this Agreement.  The Escrow Agent need not make any distribution of all or any portion of the Escrow Funds to any person until such person has furnished to the Escrow Agent such Tax Reporting Documentation as the Escrow Agent may reasonably require.

2.13    <u>Counterparts</u>.  This Escrow Agreement may be executed in two or more counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart and all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, it being understood that all parties need not sign the same counterpart.

2.14    <u>Important Information About Procedures For Opening A New Account</u>.  To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.  For a non-individual person such as a business entity, a charity, a Trust or other legal entity the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity. The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed as of the date first above written.

DREYER'S GRAND ICE CREAM, INC.

By: _____
    Name:
    Title:

U.S. BANK, NATIONAL ASSOCIATION
  as Escrow Agent

By: _____
    Name:  Michael P. Susnow
    Title:    Vice President

INTEGRATED BRANDS, INC.

By: _____
    Name:
    Title:

ESKIMO PIE CORPORATION

By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed as of the date first above written.

DREYER'S GRAND ICE CREAM, INC.

By:_____
    Name:
    Title:

U.S. BANK, NATIONAL ASSOCIATION
   as Escrow Agent

By:_____
    Name:  Michael P. Susnow
    Title:   Vice President

INTEGRATED BRANDS, INC.

By:_____
    Name:
    Title:

ESKIMO PIE CORPORATION

By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed as of the date first above written.

DREYER'S GRAND ICE CREAM, INC.

By:_____
    Name:
    Title:

U.S. BANK, NATIONAL ASSOCIATION
as Escrow Agent

By:_____
    Name:  Michael P. Susnow
    Title:  Vice President

INTEGRATED BRANDS, INC.

By:_____
    Name:  Michael Serruya
    Title:  President / CEO

ESKIMO PIE CORPORATION

By:_____
    Name:  Michael Serruya
    Title:  President / CEO